## M'ELYEA *versus* HAYTER.

The act of Congress of 29th May, 1830, granting pre-emptions to settlers on public lands, having expressly inhibited all assignments and transfers of the right of pre-emption, prior to the issuance of the patent; a power, executed with authority to convey land entered under that act, when the patent should issue, was held to be but a circuitous evasion of the act of Congress, and consequently, void, and that a title obtained under such power, was illegal and inoperative.

*Semble*—that the principle would not necessarily be the same, if, a bond, conditioned to make titles to the land, had been executed, and ratified by an *execution of the conveyance, after the patent had issued;* the latter would have constituted a new contract—although the penalty of the bond itself, or damages for its breach, might not have been recoverable.

This was an action of trespass, to try title, brought by Hayter, in the Circuit Court of Jackson. The land in controversy, had been entered by McElyea, under a pre-emption law of Congress, passed on the 29th May, 1830. Previous to the issuance of the patent to McElyea, he executed a power of attorney to one Campbell, authorising him to convey the land to Hayter, when the patent should issue. Campbell, in pursuance of the power, executed the conveyance for the land, and this action was brought to recover possession. McElyea offered, on the trial below, to show, that he had verbally revoked the power to Campbell; the Court, however, rejected testimony of this fact, and a judgment was rendered in favor of Hayter.

This case was brought here, by bill of exceptions.

McClung and Shortridge, for Plaintiff—

Contended, that there was no such contract as would entitle the plaintiff below, to an action to try title. The case is a very plain one. Can it be pretended, that to bring this case within the act of Congress, we are to spell out, and show by word and letter, that the paper was a transfer? Surely not. If the law has any meaning, we must be governed by its intent, its reason and spirit, This action is in the nature of an action of ejectment. In that action it is a well known principle, that the plaintiff must recover on the strength of his own title, and not on the weakness of that of his adversary. This principle applies here. The plaintiff must show a clear chain of title, valid and legal in every part, or he cannot recover. Here, there is a part of the chain of title that is broken. Campbell could confer no title but what he had received. He had received no transfer of title; or whatever pretended title he had, it was received at a time when no transfer whatever was permitted by law: If there was no legal transfer then, there was nothing which could be carried out and perfected afterwards. But, it is said, that if the person entitled to pre-emption, had given a bond for title, a deed of conveyance given in pursuance of such bond, would have been good; and it is contended, that that is a similar case to this—that the title made by the agent, authorised by power of a torney, is as good as if made by the party himself. We say no : There, there would have been consent; here, there was no consent, but the deed was made against the consent of the party entitled to pre-emption. Can an act which conferred nothing, become something afterwards by a subsequent event, the patentee objecting all the while? All presumption of subsequent assent, is rebutted by the fact, that the patentee op-

posed the deed of assignment. Congress, in prohibiting a transfer, intended to prohibit any and every means of passing the title. There could be no fiction which would authorise a title to be passed from one, whom the law had said should not be permitted to part with it. This would be but a subterfuge to evade the law. There are fictions of law permitted; such are those in ejectment, and in fine and recovery; but they are permitted only to support, and not to overturn the great principles of law. But to allow the imaginary fictitious state of the title here supposed, would be to overthrow the grand object which Congress had in view.

Suppose both parties to have been equally culpable in attempting this mode, to make a sale interdicted by law, who stands in the best situation? Certainly, the possessor. *In pari delicto melior est conditio possidentis.*

If this land had been given up in pursuance of the deed, the case might have been different; but the defendant below being in possession, the plaintiff had clearly no right to recover.

S. PARSONS, *contra.*—The act of Congress which declares void all transfers and assignments made prior to the issuing of the patent, is in restraint of freedom of alienation. It should, therefore, be construed with strictness. Let it be so construed, and it cannot extend to this case. The power of attorney was not a transfer; no transfer was made until after the issuance of the patent. If the party entitled to the preemption had given a bond before the issuance of the patent, and a deed afterwards, in pursuance of that bond, whatever might be said of the bond, the deed would surely be good. That case is, in principle, like the present. Here, the conveyance was made by

one having received authority to convey; it is the same as if the conveyance had been made by the party himself.

By Mr. Chief-Justice SAFFOLD :

The action is trespass, to try titles. The suit was instituted in the Circuit Court of Jackson, by Hayter, against the plaintiff in error, to recover possession of a half quarter section of land, in the district of land subject to sale at Huntsville: also, damages for the detention. A recovery was had in favor of the plaintiff below, according to the object of the suit. On the trial McElyea excepted to the evidence offered against him, but his objections were overruled, and the evidence was admitted.

This is the cause now assigned for error.

It appears that the land in question was entered by McElyea, under the act of Congress, passed on the 29th May, 1830, entitled "An act to grant pre-emption rights to settlers on the public lands;" that the patent issued to him on the 1st of June, 1831, in the usual form. It also appears in evidence that previous to the latter date, in September, 1830, McElyea had executed his power of attorney to one William H. Campbell, authorising him in the name of the principal, to execute a deed of conveyance to Hayter for the land in question, so soon as the patent should be obtained for the same. The evidence discloses the further fact, that subsequent to the date of the patent, in June 1832, the deed of conveyance was executed pursuant to the power. It is also shewn, that McElyea offered proof on the trial, that previous to the execution of the deed he verbally revoked the power of attorney, forbidding Campbell to execute the conveyance; which proof the Court rejected. All these documents appear to have been legally executed and recorded;

except so far as relates to the capacity of the parties to contract concerning the subject matter, at the time of contracting.

The act of Congress referred to, under which this entry was made, after granting the right, and prescribing the mode by which the settlers could avail themselves of its provisions, declares " that all *assignments and transfers* of the right of pre-emption, given by this act, prior to the issuance of the patents, *shall be null and void.*" This inhibition is peremptory in its terms. The policy of the restriction, unquestionably was to protect the objects of the statute from the imposition or oppression of speculators or capitalists. The circumstances which alone could confer this right of pre-emption on the settlers, their occupancy and cultivation of the public lands, pre-supposed them to have been indigent, and within the grasp of money holders. The right was about to be vested, without any previous negociation on the part of those who were intended to be benefited by it, when it might well have been apprehended, as doubtless it was, that many, in remote parts of the Union, would for some time remain ignorant of their rights, or of the requisites to establish them; and would not therefore duly appreciate them. The presumption also was well warranted, that many might, previous to the passage of the act, have assigned or transferred the right, while it remained merely in expectancy; and that by these means, the actual settlers might be deprived of the intended bounty. Hence it was, that the government, while granting the right of pre-emption, absolutely interdicted the assignment and transfer of it, prior to the issuance of the patent, by declaring all such assignments and transfers " *null and void.*"

Now, does not the power of attorney clearly imply a contract, assigning and transferring the right of pre-

emption in this case, at the time of its execution, which was long prior to the issuance of the patent? It was also previous to an act of 1832, supplementary to the former act, which removed the restraint, by providing that *after that time*, all persons who had availed themselves of the right of pre-emption under the former act, might assign and transfer their certificates of purchase or final receipts; and that the patents might issue for the lands in the name of such assignee. At the date of this latter act, Congress appears to have acted on the presumption, that the danger of injustice or oppression contemplated by the former, had ceased; that sufficient time had elapsed for all persons entitled to pre-emptions to have become informed of their rights, and to have placed them beyond the reach of injurious speculation. It is perfectly clear that one holding a certificate, or final receipt, for a pre-emption right of this description, under a transfer or assignment, executed prior to the date of the latter act of Congress, could not have obtained the patent in his own name—that he would not, by law, have been entitled to it.

Had this been only a power constituting Campbell the general agent of McElyea, to transact his business in his absence; and among other things, to convey and assign, or transfer his lands, such instrument would not have furnished internal evidence of a prior contract for the assignment or transfer of any particular article. But, in this case, the object is special and definite—that Campbell should, for McElyea, and in his name, alien and confirm by deed, to Hayter individually, this particular tract of land; from which, the inference is irresistible, that a contract then existed for the "assignment and transfer" of the same, between these persons, such as the act of

20

Congress had declared should be *null and void.* The principle is not necessarily the same, as, if instead of this power, a bond for titles had been executed at the same time, and McElyea had afterwards, when in possession of the patent, executed the deed pursuant to the previous void agreement. In this latter case, the subsequent execution of the conveyance would have constituted a new contract, when there was no restriction against it. But if suit were brought on such bond to recover the penalty, or damages, for the breach, it is clear that no such recovery could be had, because of the illegality of the contract, with reference to the subject matter, at the time when made. Though it is true, McElyea could have legally revoked this power, or he could have adopted and sanctioned it, after being authorised to alien the land; it does not appear that he did either; and viewing it as a void or voidable instrument, he is not concluded by it, unless it can be inferred, that he afterwards adopted and ratified it; of which, however, there is no evidence; on the contrary, it appears, he offered evidence of a verbal *revocation*, which the Court rejected. I do not mean to say, that a parol revocation could avoid a valid power, executed by deed; but as this power was insufficient without a subsequent approval, adoption, or ratification, we are fully authorized to assume the fact, from the rejection of this evidence, and the absence of any other, that there was none such.

The case of *Armstrong* vs. *Toler*,[a] is an authority on the principle involved in this case. It was there held, that where a contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it; also, that if a contract be, in part only, connected with the illegal consideration, and *grows immediately*

*out of it, though it be in fact a new contract, it is equally tainted by it.*

Here it is fully evident, that the circuitous mode adopted to effect this assignment and transfer, was intended as an evasion of the prohibitory act of Congress ; therefore, the title thus acquired, must be pronounced *null and void ;* and, the judgment below must be reversed, and the cause remanded, if desired by the plaintiff below.